Dear Mr. Manning:
Reference is made to your request for an opinion of this office regarding the application of LSA-R.S. 24:513(I), which pertains to audits, to the Washington Industrial Development Foundation ("WDIF"), which receives "pass through funds" from the Department of Economic Development ("LDED"), pursuant to a Workforce Development and Training Contract (the "Contract"). Your letter specifically references LSA-R.S.24:513(I)(1)(c)(i)(aa) and 513(I)(1)(c)(ii), which pertinently provide as follows:
 "Any local auditee that receives fifty thousand dollars or less in revenues and other sources in any one fiscal year shall not be required to have an audit, but must file a certification with the legislative auditor indicating that it received fifty thousand dollars or less in funds for the fiscal year. The auditee shall annually file with the legislative auditor sworn financial statements as required by R.S. 24:514. However, the legislative auditor, at his discretion, may require said local auditee to have an audit of its books and accounts". LSA-R.S. 24:513(I)(1)(c)(i)(aa).
 "Notwithstanding the provisions of R.S. 24:514, any local auditee that receives more than fifty thousand dollars in revenues and other sources in any one fiscal year, but less than three hundred fifty thousand dollars, shall cause to be conducted an annual compilation of its financial statements, to be accompanied by an attestation report on the entity's compliance with laws and regulations. Such attestation matters shall be in accordance with the Louisiana Governmental Audit Guide. However, the legislative auditor, at his discretion, may require said local auditee to have an audit of its books and accounts." LSA-R.S. 24:513(I)(1)(c)(ii). (Emphasis supplied).
It is our understanding that LDED entered into the Contract, effective November 1, 2000, with Service Zone, Incorporated ("Service Zone") and WIDF, the purpose of which was to provide part of the cost of job training for new employees hired by Service Zone. All of the funding, in the sum of $138,152, was transferred by LDED to WDIF in order that the funds could be used to reimburse Service Zone for expenses related to employee training; none of the funds were to be used to benefit WIDF. Your letter states:
 "WIDF received the funds only as a pass through mechanism in trust, for the purpose of forwarding the funds to Service Zone. WIDF did not have the authority to spend or use any of the funds for its own benefit or pay any of its expenses."
 "During WIDF's fiscal year ending December 31, 2001, $138,152 was disbursed by LDED to WIDF and then forwarded to Service Zone. If these funds are considered `revenues and other sources', WIDF must provide the more detailed financial report required by 513(I)(1)(c)(ii), which will cost WIDF an additional $2,500.00. This additional cost would be solely to audit the receipt and disbursement of two payments The Workforce Contract requires Service Zone to have an audit conducted on the receipt and expenditure of all funds related to the Workforce Contract An audit by WIDF of these funds will provide no additional information We therefore request your opinion as to whether the receipt, in trust, of the pass through funds described above are considered "revenues and other sources" and as such require WIDF to procure the additional audit procedures provided in 513(I)(1)(c)(ii)."
Please be advised that it is the opinion of this office that the funds in question, received by WIDF from LDED, fall within the rather broad category of "revenues and other sources", as referred to in LSA-R.S.24:513(I)(1)(c)(ii). We recognize that the funds in question were not intended to be "revenues" to WDIF, in the sense that WIDF received no direct benefit from those funds. However, the funds in question are a `source' of public money received by WDIF, even though the funds merely `passed through' WDIF's accounts to Service Zone.
The State has a clear interest in monitoring and insuring the proper expenditure or transfer of public funds such as those received by WDIF. In our opinion, the fact that the funds merely `passed through' WDIF and were of no direct benefit to WDIF, does not lessen the State's interest in monitoring or auditing WDIF. As such, it is the opinion of this office that WDIF is required to provide the more detailed financial report required by that provision of LSA-R.S. 24:513(I)(1)(c)(ii).
Our opinion in this regard is based upon the following rules of statutory construction: When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. Art 10. A statute should be given a construction according to the fair import of its words taken in their usual sense, in connection with the context, and with reference to the purpose of the provision. State v. Truby, 29 So.2d 758 (La. 1947). The object the legislature has in view should be ascertained, and the interpretation adopted should be that which best harmonizes with such object. Bradley v. Swift Co., 119 So. 559 (La. 1928). Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. LSA-R.S. 1:3. The law requires a fair and genuine construction of legislative acts, and a reasonable construction in light of the purpose of the act. Broussardv. F.A. Richard Associates, Inc., 732 So.2d 578 (La.App. 3 Cir. 1999); writ denied, 744 So.2d 625.
We trust the foregoing to be helpful. If we can be of assistance to you or the Department of Economic Development in other areas of the law, please do not hesitate to contact us.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ________________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI/JMZB/dam
cc: Mr. Grover C. Austin
Date Released: September 20, 2002